**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CHRIS P. FRAZIER**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DAVID BURROUGHS, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 49A04-1307-CR-360 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
Cause No. 49G01-1304-FC-27916

**February 27, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

David Burroughs appeals his conviction for Class C felony burglary. We affirm.

**Issue**

The sole issue is whether the trial court properly admitted DNA evidence from blood samples retrieved at the crime scene over Burroughs's chain of custody objection.

**Facts**

In the morning of December 2, 2012, the Indianapolis Metropolitan Police Department ("IMPD") responded to a reported break-in at a cell phone store. The front door's glass was shattered, as was a glass display case, and there were apparent blood stains at both locations. Officer Damon King, an evidence technician, collected the apparent blood stains with two separate swabs. Sarah Klaussen of the Indianapolis-Marion County Forensic Services Agency ("FSA") later retrieved the swabs, tested them to confirm that they in fact contained human blood, and then submitted them for further DNA testing. IMPD Detective Brian Hofmeister subsequently obtained a warrant for a buccal swab from Burroughs to collect DNA.[1] FSA DNA analyst Shelley Crispin then compared the DNA from the blood stains collected at the crime scene with Burroughs's DNA and determined that the three samples matched. Crispin found no evidence of any other person's DNA in the crime scene blood samples. There was no other evidence placing Burroughs at the crime scene.

---

[1] It is unclear from the trial transcript what led Detective Hofmeister to obtain a warrant to collect Burroughs's DNA, but the probable cause affidavit indicates that the blood samples preliminarily matched DNA previously collected from Burroughs through the FBI and the Department of Correction.

2

The State charged Burroughs with Class C felony burglary and Class D felony theft. During trial, Officer King testified that, after collecting the blood samples on the swabs, he placed a plastic cap over them, placed each of the swabs into two separate small envelopes, marked each small envelope with the location where the evidence was collected, and then placed the small envelopes into a larger envelope, which he then sealed and initialed. Klaussen, however, testified that when she retrieved the samples to test for the presence of human blood, the two swabs were together within one single smaller envelope, not two separate envelopes, placed inside of the larger envelope. The plastic caps were still on the swabs. Based on the discrepancy between Officer King's and Klaussen's testimony regarding how the swabs were packaged, Burroughs objected to admission of the DNA test results because of an alleged break in the chain of custody of the blood samples. The trial court overruled the objection. The jury subsequently found Burroughs guilty of burglary and acquitted him of theft. Before sentencing, Burroughs asked the trial court to reconsider admission of the DNA test results, but it refused to do so. Burroughs now appeals.

**Analysis**

On appeal, Burroughs renews his challenge to the admissibility of the DNA test results. We review trial court rulings on the admission or exclusion of evidence only for an abuse of discretion. Collins v. State, 966 N.E.2d 96, 104 (Ind. Ct. App. 2012). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law." Id.

Regarding chain of custody for "fungible" evidence, including blood samples, the State bears the burden of giving reasonable assurances that the evidence remained in an

3

undisturbed condition as it passed through various hands. Troxell v. State, 778 N.E.2d 811, 814 (Ind. 2002). The State need not establish a perfect chain of custody, and once the State strongly suggests the exact whereabouts of the evidence, any gaps go to the weight of the evidence and not to its admissibility. Id. There also is a presumption of regularity in the handling of evidence by officers and that officers exercise due care in performing their duties. Id. To exclude evidence based on an inadequate chain of custody, a defendant must present evidence that does more than raise a mere possibility that the evidence may have been tampered with. Id.

Here, there was admittedly a discrepancy between the testimony of Officer King and Klaussen regarding precisely how the crime scene blood sample swabs were packaged. Burroughs argues that this discrepancy points to "a high likelihood the samples were contaminated or otherwise tampered with." Appellant's Br. p. 7. We disagree. As suggested by the trial court, the discrepancy in the testimony could just as easily be explained by faulty memory on the part of either Officer King or Klaussen regarding precisely how the swabs were packaged. The large envelope into which the swabs had been placed was still sealed when Klaussen retrieved it. The swabs also still had the plastic caps on them, to protect against possible cross-contamination. Additionally, there was no evidence of any DNA in the blood samples other than from Burroughs, indicating that the samples were not contaminated by any other material.

Burroughs's argument invites speculation that someone in the IMPD or FSA lab somehow replaced the samples Officer King collected at the scene with samples of Burroughs's blood before Klaussen retrieved the evidence envelope. We conclude,

4

however, that such speculation is far from enough evidence to overcome the presumption that officers carry out their duties properly and do not tamper with evidence. The discrepancy in testimony between Officer King and Klaussen regarding the packaging of the blood samples at best only raises a "mere possibility" of tampering that goes to the weight of the DNA evidence, and it does not represent a fatal break in the chain of custody.

## Conclusion

The trial court did not abuse its discretion in admitting the DNA results from the crime scene blood swabs into evidence. We affirm Burroughs's conviction.

Affirmed.

ROBB, J., and BROWN, J., concur.